CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 04 2021

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NATALIE C., ) | |
| ) | |
| Plaintiff ) | Civil Action No. 7:20-CV-423 |
| ) | |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, Commissioner of ) | |
| Social Security, ) | By: Michael F. Urbanski |
| ) | Chief United States District Judge |
| ) | |
| Defendant ) | |

**MEMORANDUM OPINION**

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on August 5, 2021, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Natalie C. (Natalie) has filed objections to the R&R and this matter is now ripe for the court's consideration. As discussed more fully below, the court **SUSTAINS** one of Natalie's objections and **REMANDS** this case for further proceedings.

**I. Background**

Natalie filed an application for disability insurance benefits (DIB) on January 24, 2016 alleging disability beginning on May 1, 2013. She also filed an application for supplemental security income (SSI) on February 8, 2016, alleging the same onset date. Natalie was 26 years

old at the alleged onset date. She sought disability based on being legally blind and having nystagmus, torticollis, esotropia, high myopia, macular atrophy, and optic atrophy in both eyes. In addition, she alleged that headaches, a learning disability, anxiety, and a stuttering problem precluded her from full-time work. R. 312, 321.

Natalie worked as a part-time cafeteria aide after her alleged onset date, but the ALJ found that her earnings were below the earnings threshold for substantial gainful activity (SGA). R. 12-13. The ALJ found that Natalie's impairments of status-post strabismus surgery, optic and macular atrophy, exotropia, nystagmus, high myopia, learning disorder with impairment in mathematics, borderline intellectual functioning, unspecified anxiety order, and major depressive disorder were severe under the regulations, but that none of them met or medically equaled a listed impairment. R. 13-14.

The ALJ determined that Natalie had the capacity to perform work at all exertional levels, except that she needed to avoid carrying boxes and other items weighing more than 25 pounds due to vision issues. She could have no exposures to hazardous machinery, and could not work at unprotected heights, climb ladders, ropes, or scaffolds, or work on vibrating surfaces. She could understand, remember, and carry out simple instructions in repetitive, unskilled work, attend, persist, and concentrate for two-hour segments with normal breaks as allowed by the employer, and complete a normal eight-hour workday and 40-hour workweek in work involving only occasional interactions with the general public, coworkers, and supervisors, although she was able to respond appropriately to supervision, coworkers, and usual work situations. She was limited to jobs requiring little or no math skills, and little or no reading due to vision issues. She could not work in a fast-paced environment, such as an

assembly line. She should be permitted to use reading glasses or large fonts to do any required reading. She could not do inspection-type jobs, such as those requiring her to see debris left on plates after going through a dishwasher and could not use a monitor more than one to two hours per day. R. 16.

Natalie had past relevant work as a kitchen helper, cafeteria worker, and childcare attendant and the ALJ determined that she could not return to any of those jobs. However, based on testimony from the vocational expert (VE), the ALJ determined that Natalie could do the work of an assembler, packer, or laundry worker, and that such jobs existed in significant numbers in the United States. Thus, the ALJ found that Natalie was not disabled.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Natalie has objected to several of the magistrate judge's findings.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

3

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section

4

636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '<u>those portions</u> of the report or <u>specified</u> proposed findings or recommendations <u>to which objection is made</u>.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .")

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

### III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Natalie objects to the following findings by the magistrate judge: (1) The ALJ properly considered the opinions of the state agency physicians; (2) The ALJ properly assessed Natalie's residual functional capacity (RFC) under SSR 96-8P when she included a narrative discussion describing how the evidence supported her RFC determination; (3) The ALJ properly assessed Natalie's subjective allegations.

The court finds that the ALJ failed to properly explain her assessment of Natalie's RFC and remands the case on that basis. Having found remand is proper, Natalie's other objections are not addressed.

## V. Analysis

### A. RFC Assessment

The process for assessing a claimant's RFC is set forth in SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ruling sets out in relevant part the following:

> The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Id. at *1. Physical abilities set out in 20 C.F.R. 404.1545(b) and 416.945(b) include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching. Mental abilities set out in paragraph (c) of the regulation include understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-

---

[2] Detailed facts about Natalie's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 23) and in the administrative transcript (ECF No. 10) and will not be repeated here except as necessary to address her objections.

7

workers, and work pressures in a work setting. Other abilities set out in paragraph (d) of the regulation include those affected by skin impairments or epilepsy, impairment of vision, hearing, or other senses, or impairments which impose environmental restrictions.

The RFC analysis must include a narrative discussion describing how the evidence supports each conclusion. The ALJ must cite specific medical facts such as lab results and nonmedical evidence such as daily activities and observations of the claimant. The ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity the claimant can perform based on the evidence in the case record. The ALJ also must explain how he considered and resolved any material inconsistencies or ambiguities in the record. SSR 96-8P, 1996 WL 374184 at *7.

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)), the Fourth Circuit rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis. However, the court went on to find that remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrates meaningful review." Id. (citing Cichocki, 729 F.3d at 177).

In Natalie's case, the court finds that there are two gaps in the ALJ's analysis that frustrate meaningful review.[3] First, while the RFC assessment is otherwise thorough, it does

---

[3] Although Natalie challenged the adequacy of the ALJ's RFC determination, she did not raise either of these particular issues. However, while the Federal Magistrates Act, 28 U.S.C. § 636, does not require a district judge to review an issue de novo if no objections are filed, "it does not preclude further review by the district

8

not appear to contemplate the role job coaches have played in Natalie's ability to work. In the disability report, it is noted that Natalie had been receiving services from the Department for Aging and Rehabilitative Services (DARS) since 1991 and that she had a job coach who "helps her to be able to do her job." R. 321. She also received help with school and getting accommodations at school and help with homework. Id. In 2013, shortly before her alleged onset date, a representative from DARS conducted a work assessment for Natalie and commented that she observed Natalie at work "with her Job Coach in attendance." R. 533. In November 2013, Natalie was receiving ongoing support services which included, at a minimum, twice-monthly monitoring at the work site to assess employment stability. R. 445.

In September 2015 it was noted that Natalie had been hired to work in a school cafeteria and a job coach had been assigned to her. R. 432. In an October 21, 2015 case note from a DARS specialist, Natalie was observed at work and was confident, worked well with other employees, and relied on her own communication skills when she had a question or attempted to problem solve on her own. However, it was further noted that Natalie reached out to the DARS specialist after she "exhausted all of her jobsite resources" and the specialist "would continue to support [Natalie] in the areas of counting." R. 431. In November 2015, it was noted that Natalie continued to do well "with faded support and has done an excellent job at her new school." R. 430. In December 2015 DARS noted that Natalie had worked for over ninety days, done very well in the new job, and agreed to close her case. R. 429.

---

judge sua sponte or at the request of a party, under a de novo or any other standard." Thomas v. Arn, 474 U.S. 140, 154 (1985).

9

While it is true that DARS closed Natalie's case after finding she was doing well in her job, the ALJ did not assess whether Natalie would need assistance from a job coach if she moved to a new position and did not include the need for assistance in a hypothetical question to the VE. Whether a claimant needs a job coach, even temporarily, is relevant to a disability determination. See Humphries v. Comm'r Soc. Sec. Admin., No. 7:18CV00380, 2020 WL 1289538, at *5 (W.D. Va. Mar. 18, 2020) (remanding because ALJ failed to adequately address evidence that plaintiff would need special supervision or assistance in the form of supported employment or a job coach to sustain employment); Bennett v. Berryhill, No. 2:17cv520, 2019 WL 1104186, at *12 (E.D. Va. Feb. 15, 2019) ("Whether Plaintiff needs or does not need extra supervision or a job coach to perform tasks consistently is determinative of whether competitive work is available in the national economy . . . ."); and Saunders v. Colvin, No. 7:14-CV-00096, 2015 WL 5674901, at *9 (W.D. Va. Sept. 25, 2015) (remanding in part because ALJ did not explain why plaintiff did not require at least an initial job coach).

Because the ALJ did not address whether Natalie would need a job coach, the court is left to wonder about whether Natalie can function independently in the positions described by the VE as being representative of jobs she could perform. Accordingly, the court finds that the ALJ's decision falls short of the requirements set forth in SSR 96-8P because the court cannot determine whether the decision is supported by substantial evidence.

Another question raised by the ALJ opinion is why the ALJ found Natalie unable to do her past relevant work as kitchen helper and cafeteria worker, both of which were unskilled

with an SVP[4] of 2, but then found that she could the jobs of assembler, packer, and laundry worker, which are classified as unskilled with an SVP of 1 or 2. When the ALJ presented the first hypothetical question to the VE and asked him if Natalie could do any of her past relevant work, the VE responded that "for one reason or another, the worker could not perform any of the . . . past work activity, regardless of SGA." R. 74. In the ALJ opinion, the ALJ found that based on the VE's testimony, the demands of Natalie's past relevant work exceeded her RFC. R. 27. However, neither the VE nor the ALJ identified the work demands that Natalie could no longer perform. More importantly, the ALJ did not explain why Natalie could do the jobs described by the VE when she was unable to do her past relevant work and two of her past jobs were the same skill level and required the same SVP as the jobs she was found able to do.

Based on the foregoing, the court **SUSTAINS** Natalie's objection to the report of the magistrate judge that the ALJ properly assessed her RFC. The court also finds that the ALJ erred when she failed to describe the limitations that keep Natalie from doing her past relevant work and the differences between the work Natalie can do and the work she cannot do. The court **REMANDS** Natalie's case for further development in accordance with this memorandum opinion. Because the court finds that remand is proper for these reasons, it does not address Natalie's other objections.

---

[4] Specific vocational preparation (SVP) is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." An SVP of 1 requires a short demonstration only. An SVP of 2 requires anything beyond a short demonstration up to and including 1 month. R. 28; see also explanation of Specific Vocational Preparation in the Dictionary of Occupational Titles.
https://occupationalinfo.org/appendxc_1.html#II (last viewed November 1, 2021).

## VI. Conclusion

For the reasons stated, the court will **SUSTAIN** Plaintiff's objections to the Report & Recommendation that the RFC was not supported by substantial evidence, **GRANT** her motion for summary judgment, and **REMAND** this case to the Commissioner for further proceedings consistent with this opinion.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: November 3, 2021

Michael F. Urbanski